

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Randal Ellison,  )
    Plaintiff,  ) **08CV3695**
v.  ) **JUDGE HART**
   ) **MAGISTRATE JUDGE COX**
Aurora East School District 131,  )
Board of Education School District 131,  )
Michael Rdakovich,  )
Jerome Roberts,  ) Jury Demanded
Yvone Hollingsworth,  ) FILED
James Vaughan,  )
    Defendants.  )

JUN 2 7 2008 TC
Jun 27. 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**COMPLAINT**

**I. JURISDICTION**

1. This is an action brought for injunctive relief and money damages to regress the injuries defendants have caused to plaintiff by the deprivation under color of state law of the right to due process secured to plaintiff by the fourteen amendment of the Constitution of the United States.

2. This action is brought pursuant to 42 U.S.C. sec. 1983. This Court has jurisdiction under 28 U.S.C. sec. 1331 and 1343.

**II. PARTIES**

3. Plaintiff, Randal Ellison, ("Randal") is a citizen of the United States of America residing in Wheaton, Dupage County Illinois.

4. Defendant. Aurora East School District 131 ("District") is a duly constituted school district in East Aurora, Illinois operating under the laws of the State of Illinois and, as such, is a governmental unit.

1

5. The Defendant, Board of Education of School District 131, ("Board"), is a governmental body responsible for promulgating all policies for the District and was the employer of the individual defendants and the plaintiff at all times relevant hereto.

6. Defendant Michael Radakovich, was at all relevant times the superintendent of the District, and as such, was the chief administrative head of said District.

7. Defendant Jerome Roberts, was at all relevant times an assistant superintendant of the District.

8. Defendant Yvone Hollingsworth, was at all relevant times the human resource director of the District.

9. Defendant James Vaughan, was at all relevant times an assistant superintendent of the District.

### III. FACTS

10. On April 21, 2003 Randal was hired as a principal of Simmons Middle School by the District, through its Board, pursuant to a Middle School Principal's Contract a copy of which is attached hereto as Exhibit "A".

11. The term of the Contract expired on June 30, 2006. Exhibit "A" p.1

12. The Contract was a Multi-Year Performance-Based Contract for achieving academic improvement in a school whose student's had an extremely poor history of academic achievement.

13. Randal's duties under his Contract all related to his administration of the school as principal and his duties did not require him to perform as a teacher in any of the classes; his Contract further specified that he was not a teacher possessing tenure in the District.

14. Randal was not authorized to teach any classes in the District, and he never performed any teaching duties during his employment with the District.

15. During his term with the District, Randal met all expectations by raising test scores of the students in his middle school from the lowest in the entire Aurora School District to a high level of acceptability.

16. Between April 21, 2003, when he was employed by the District and December 2005, Randal received excellent performance evaluations and had received substantial raises in his salary based upon those favorable evaluations.

17. On or about December 2005, Randal was injured while on duty at the District, which injury resulted in a broken back and major degeneration in his hip which injuries ultimately resulted in numerous surgeries in his hip and back, causing him to be placed on disability leave from May 2006 through June 30, 2006.

18. On December 12, 2005 Randal notified the District of his work related injury, thereby instituting a Worker's Compensation Claim against the District, which the District immediately began to process.

19. On a February 15, 2006 Randal notified the Board that he would not renew his Principal's Contract and that he would not work for the District beyond his June 30, 2006 Contract termination date.

20. Notwithstanding this notice and notwithstanding his excellent evaluations and continuous progress in meeting the requirements of his Performance-Based Contract, without any cause or justification whatsoever, the Board reclassified Randal from his position as principal and classified him as a teacher for the school year 2006-2007, which reclassification was to take effect upon the expiration of his Principal's Contract on June

30, 2006.

21. At no time did Randal ever apply to the District for a teacher's position for the 2006-2007 school year, nor did the terms of his Principal's Contract authorize or enable his involuntary appointment to either a principal's or teacher's position after June 30, 2006.

22. At the same time the Board reclassified Randal as a teacher for the 2006-2007 school year, they summarily terminated Randal as a teacher for the 2006-2007 school year without any hearing, cause, or justification whatsoever.

23. All of the defendants participated in the aforementioned conduct.

24. The defendants' conduct in reclassifying Randal as a teacher for a term to commence after his Principal's Contract had expired without any request or application by Randal for said position, and then terminating him without any cause or justification whatsoever, constituted a flagrant act of retaliation against Randal for exercising his statutory right to obtain Worker's Compensation for a major injury that he had suffered during his employment with the District.

25. This outrageous conduct by the defendants was maliciously done in an obvious effort to punish Randal for filing his Worker's Compensation Claim by stigmatizing him by creating a negative employment record of involuntary termination that reasonably and foreseeably prevent him from obtaining future employment as a school administrator and/or teacher

26. The existence of the fallacious employment record created by the defendants, as set forth above has prevented Randal from obtaining employment as a school administrator by reason of the stigma that has been placed upon him.

27. At all times the District's Board, its officers, agents and employees, including the other

named defenders, have adopted and engaged in a policy of violating Randal's rights through its willful and wrongful acts of retaliation.

28. As a result of the defendant's acts, Randal has suffered economic and other losses and has suffered extreme humiliation, embarrassment and mental distress.

## COUNT 1

29. Plaintiff realleges paragraphs 1 through 28 as in for this paragraph 29.

30. At all times material hereto, defendants were acting under color of state law.

31. The actions of defendants, set forth above maliciously and punitively misrepresented the circumstances of plaintiff's termination of his employment with the District in a manner that intentionally stigmatized and disparaged him in his employment and thereby deprived plaintiff of property without due process of law in violation of the fourteenth amendment of the United States Constitution, 42 U.S.C. Sec. 1983, the Constitution of the State of Illinois, and other applicable provisions of State and local law and regulations.

32. The actions of defendants were arbitrary and capricious.

33. By reason of the foregoing acts of defendants, the plaintiff has been deprived of two years of salary that he reasonably would have earned as a school administrator and has incurred related financial and psychological damages in a yet undetermined amount.

34. Defendants have exhibited a malicious and wanton disregard for plaintiff's constitutional rights and in addition to the actual damages they have caused, plaintiff is entitled to recover punitive damages sufficient to deter them and others from undertaking such conduct in the future.

WHEREFORE, plaintiff respectfully requests that this court enter judgment as follows:

A. Awarding plaintiff compensatory damages in an amount to compensate him for the income he reasonably would have received if plaintiffs had not engaged in their unlawful acts.

B. Awarding plaintiff punitive damages against defendants, Board, Radakovich, Roberts, Hollingsworth and Vaughan in an amount sufficient to deter them and others from undertaking like unlawful conduct in the future.

C. Awarding plaintiff the reasonable attorneys' fees incurred by him in connection with this action as well as the costs and disbursements of this action.

D. Grant such other and further relief as maybe just and proper.

## COUNT II

35. Plaintiff realleges paragraphs 1 through 34 as in for this paragraph 35.

36. On information and belief, defendants have maintained and distributed records falsely indicating that Randal was involuntarily reclassified from his principal's position with the District and terminated as a teacher with the District.

37. The maintenance and distributions of those records by the defendants disparaged Randal's reputation as an educator and irreparably injures him on an ongoing basis.

38. By reason of the ongoing nature of the injuries, damages are difficult to calculate and Randal's remedy at law is inadequate without requiring the defendants to expunge, retract and cease and desist from the wrongful maintenance and publication of those records.

WHEREFORE, plaintiff respectfully requests that this court enter judgment as follows:

A. Temporarily, preliminarily, and permanently enjoining defendants from maintaining, distributing and publishing any information that reasonably would indicate that Randal was reclassified as a principal or terminated as a teacher.

B. Mandating that the defendants identify and contact any and all persons to whom the aforementioned wrongful and incorrect record of the circumstances of Randal's termination of his services with the District has been distributed, and formally retract said information and indicate that Randal's services with the District ended at the time of termination of his Contract with the District.

C. Grant such other and further relief as maybe just and proper.

Respectfully submitted,

*(signature)*

Robert V. Gildo, on behalf of
Randal Ellison

Robert V. Gildo
120 North Hale, 3rd Floor
Wheaton, Illinois 60187
(630) 462-7979 / fax (462-8067)

# AURORA EAST SCHOOL DISTRICT #131

## MIDDLE SCHOOL PRINCIPAL'S CONTRACT

AGREEMENT made as of this 21st day of April, 2003, by and between the BOARD OF EDUCATION, SCHOOL DISTRICT #131 (the "Board") and RANDAL ELLISON ("Middle School Principal"), ratified by a resolution adopted at the regular meeting of the Board held on April 21, 2003, and as found in the minutes of that meeting.

**IT IS AGREED:**

1. **Employment.** The Board hereby employs the Middle School Principal for three (3) years, commencing July 1, 2003 and terminating on June 30, 2006. The Middle School Principal shall work 224 days during each contract year.

2. **Duties.** The duties and responsibilities of the Middle School Principal shall be all those duties set forth in the Middle School Principal's job description, those obligations imposed by law, and such other duties as required by Board policy and as from time to time may be assigned to the Middle School Principal by the Superintendent of Schools.

3. **Salary.** The compensation of the Middle School Principal for the initial contract year (2003-2004), shall be Ninety-One Thousand Five Hundred Dollars ($91,500.00). The annual compensation shall be paid in equal installments in accordance with the policy of the Board governing payment of compensation to members of the teaching staff. Whenever additions or deductions of pay are required on a per diem basis, the per diem rate shall be calculated on the basis of a 260 day year. For the remaining contract years (2004-2005 and 2005-2006), the Board shall determine the Middle School Principal's compensation on the basis of the Middle School Principal's progress toward the goals developed in accordance with Paragraph 14. The Middle School Principal's compensation for contract years 2004-2005 and 2005-2006 shall not be less than his compensation for the 2003-2004 contract year.

   In consideration of compensation provided for herein the, Middle School Principal hereby agrees to devote his time, skill, labor and attention to his employment during the terms of this Agreement, and to perform faithfully the duties of Middle School Principal as set forth in this Agreement.

4. **Evaluation.** Annually, not later than the last day of this Agreement, the Superintendent and/or designee shall review with the Middle School Principal his job performance, including progress toward established goals and working relationships among staff and community.

5. **Termination for Cause.** Throughout the term of this Agreement, the Middle School Principal shall be subject to termination for good cause. Any failure to comply with the terms and conditions of the Agreement shall constitute good cause. The Board shall provide the Middle School Principal with written charges describing the grounds for termination.

*Exhibit "A"*

6. **Termination/Reclassification.** The Middle School Principal understands that tenure rights do not apply to the position of Middle School Principal and, therefore, tenure shall not apply to the continuation of this Agreement for the position of Middle School Principal. Any reclassification of the Middle School Principal shall be in accordance with the requirements of Section 10-23.8b of The *School Code* of Illinois ("*School Code*"), and any termination of the Middle School Principal as a teacher shall be in accordance with the requirements of Sections 24-11 through 24-16 of the *School Code*, if applicable.

7. **Termination by Agreement.** During the term of this Agreement, the Board and the Middle School Principal may mutually agree, in writing, to terminate this Agreement.

8. **Vacation and Sick Leave.** The Middle School Principal shall be granted 22 vacation days and paid holidays as per the school calendar annually. The Middle School Principal shall not be required to work on the legal holidays designated in the school calendar, and shall be entitled to 30 work days of sick leave for the 2003-2004 contract year and 18 work days of sick leave during each subsequent contract year, of which 3 days can be used as personal/emergency leave. Earned sick leave may accumulate to a maximum of 260 days.

9. **Teacher's Retirement System.** The annual compensation stated in Paragraph 3 of this Agreement includes a contribution by the Board on behalf of the Middle School Principal to the State of Illinois Teachers' Retirement System in the amount equal to nine percent (9%) of the Middle School Principal's salary, in lieu of and in satisfaction of the Middle School Principal's required contribution to said Teachers' Retirement System.

   The Middle School Principal does not have any right or claim to said amount contributed by the Board on his behalf except as it may become available at the time of retirement or resignation from the State of Illinois Teachers' Retirement System. Both parties acknowledge that the Middle School Principal did not have the option of choosing to receive the contributed amounts directly, instead of having such contributions paid by the Board to the State of Illinois Teachers' Retirement System, and that such contributions are made as a condition of employment to secure the Middle School Principal's future services, knowledge and experience.

10. **Teacher's Health Insurance.** In addition to the compensation stated in Paragraph 3 of this Agreement, the Board shall pay the Middle School Principal's required Teacher's Health Insurance contribution.

11. **Medical/Dental/Vision.** The Board shall provide medical, dental, vision care, and employee assistant programs for the Middle School Principal and the members of the Middle School Principal's immediate family during the term of this Agreement in accordance with the basic insurance coverage provided to members of the teaching staff.

12. **Term Life/Long Term Disability.** The Board shall provide $90,000 of term life insurance and long term disability insurance for the Middle School Principal during the term of this Agreement in accordance with the basic insurance coverage provided to members of the teaching staff.

13. **Travel Allowance.** The Board shall pay the Middle School Principal a travel allowance of $306.13 per semester during the term of this Agreement.

14. **Student Performance and Academic Improvement Goals:** This Agreement is a multi-year performance-based contract pursuant to Section 10-23.8a of the Illinois *School Code*. The Middle School Principal and the Board shall, within sixty (60) days of the effective date of this Agreement, mutually develop student performance and academic improvement goals. The agreed-upon goals shall be attached to this Agreement as Exhibit A incorporated into this Agreement.

15. **Early Retirement.** The Middle School Principal shall be eligible to receive an additional salary payment upon the giving of his notice of retirement in the same percentage amount as set forth in the 2001-2004 Collective Bargaining Agreement between the Board and the East Aurora District 131 Teachers' Union, and more particularly Section 11.8 thereof, provided all of the conditions also set forth therein are fully complied with, and provided further the Board may in its sole discretion establish a maximum number of District administrators eligible to receive such retirement payment (but not less than one (1) per school year) and may prescribe the selection criteria to be employed in the event such maximum number is exceeded. Nothing herein shall be interpreted as to compel the Board to continue this retirement benefit program in any succeeding school year.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their respective names, and in the case of the Board, by its President, on the day and year first written above.

| BOARD OF EUDUCATION DISTRICT #131 | MIDDLE SCHOOL PRINCIPAL |
|---|---|
| By: _____ President | _____ Randal Ellison |
| Date: 4-21-03 | Date: 5/19/03 |

ATTEST:

By: _____
     Secretary

Date: 5/21/03